UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

ANTHONY BARNETT,

                              Plaintiff,

            v.                                                  17 Civ. 2682 (KPF)

NATIONAL PASSENGER RAILROAD
CORPORATION (AMTRAK),

                              Defendant.

------------------------------------------------------:        **OPINION AND ORDER**

ANTHONY J. BARNETT, JR.,

                              Plaintiff,

            v.                                                  17 Civ. 2683 (KPF)

NATIONAL PASSENGER RAILROAD
CORPORATION (AMTRAK),

                              Defendant.

------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

       On February 5, 2015, Plaintiff Anthony Barnett ("Barnett Senior") and

his son, Plaintiff Anthony J. Barnett, Jr. ("Barnett Junior") (collectively,

"Plaintiffs"), submitted online job applications for positions with Defendant

National Railroad Passenger Corporation ("Amtrak"). Several years earlier,

Barnett Senior had lodged a complaint with his then-employer, New Jersey

Transit Corporation ("NJ Transit"), regarding gender discrimination in the

workplace. According to Barnett Senior, NJ Transit ultimately fired him in retaliation for that complaint.

Several months after Plaintiffs submitted their applications, Defendant notified them that neither applicant had been selected for the job. Plaintiffs contend that Defendant did not hire them because of its awareness of Barnett Senior's prior protected activity — his discrimination complaint against NJ Transit. In consequence, Plaintiffs now bring claims against Defendant for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, for failing to hire father and son.

Defendant initially moved to dismiss Plaintiffs' Amended Complaints under Federal Rule of Civil Procedure 12(b)(6). The Court exercised its discretion to convert the motions into motions for partial summary judgment under Federal Rule of Civil Procedure 56 on the limited issue of Defendant's knowledge of any protected activity on the part of Barnett Senior. Because, as discussed below, the Court finds that Defendant had no such knowledge, the Court grants Defendant's motions.

# BACKGROUND[1]

## A.     Factual Background

Barnett Senior had previously been employed at NJ Transit as a locomotive engineer trainee. (Barnett Sr. Am. Compl. ¶ 6). While working for NJ Transit, Barnett Senior had lodged a complaint regarding "gender discrimination in a predominantly male occupation and a culture of fear and reprisal that is tolerated and exist[s] in most if not all modern Class I Railroads in the United States." (*Id.* at ¶¶ 6-10, 49). In 2008, shortly after lodging his complaint, Barnett Senior was terminated from his position. (*Id.* at ¶ 36; EEOC Charge ¶ 1). In approximately 2009, Barnett Senior initiated legal action

---

[1]     This Opinion addresses the two lawsuits brought by Barnett Senior and Barnett Junior. Because the actions are not merely related, but share a common factual nucleus, the Court addresses Defendant's motions in both cases in a single opinion. Though the complaints in each case are somewhat different, much of the supporting documentation on the dockets of both is the same.

The facts contained in this Opinion are drawn from Barnett Senior's Amended Complaint (17 Civ. 2682, Dkt. #20 ("Barnett Sr. Am. Compl.")), and Barnett Junior's Amended Complaint (17 Civ. 2683, Dkt. #18 ("Barnett Jr. Am. Compl.")). Additional factual material relevant to Defendant's knowledge of Barnett Senior's protected activity is drawn from the exhibits attached to the parties' supplemental submissions after the Court converted the motions, in part, into motions for summary judgment (17 Civ. 2682, Dkt. #35, 38, 39; 17 Civ. 2683, Dkt. #28-30).

For ease of reference, Defendant's brief in support of its motion to dismiss Barnett Senior's Amended Complaint is referred to as "Def. Br. Barnett Sr." (17 Civ. 2682, Dkt. #25); Defendant's brief in support of the motion to dismiss Barnett Junior's Amended Complaint is referred to as "Def. Br. Barnett Jr." (17 Civ. 2683, Dkt. #22); Plaintiff Barnett Senior's opposition memorandum is referred to as "Barnett Sr. Opp." (17 Civ. 2682, Dkt. #30); Plaintiff Barnett Junior's opposition memorandum is referred to as "Barnett Jr. Opp." (17 Civ. 2683, Dkt. #24); and Defendant's reply memoranda to Barnett Senior and Barnett Junior are referred to as "Def. Reply Barnett Sr." (17 Civ. 2682, Dkt. #31) and "Def. Reply Barnett Jr." (17 Civ. 2683, Dkt. #25), respectively. Plaintiffs' supplemental briefing with regard to Defendants' motions for summary judgment will be referred to as "Pl. Supp. Br." (17 Civ. 2682, Dkt. #35; 17 Civ. 2683, Dkt. #28). Defendant's supplemental briefing will be referred to as "Def. Supp. Br." (17 Civ. 2682, Dkt. #38-39; 17 Civ. 2683, Dkt. #29-30).

against NJ Transit, and the ensuing litigation continued for several years. (Barnett Sr. Am. Compl. ¶¶ 14, 16).

On February 5, 2015, Barnett Senior submitted an online application for a Passenger Engineer Trainee position with Amtrak in New York. (Barnett Sr. Am. Compl. ¶¶ 1-3). In response to an application question concerning prior railroad experience, Barnett Senior listed his employment with NJ Transit. (*Id.* at ¶¶ 5, 6). When prompted to list the reason why he was no longer employed by NJ Transit, Barnett Senior alleges that he "answered the online question … by stating that he was terminated via constructive discharge due in large part to [his] complaints of and opposition to gender based discrimination in the workplace at New Jersey Transit." (*Id.* at ¶ 10).

On the same day as his father, Barnett Junior applied online for the Amtrak position in New York, as well as a similar position in Philadelphia. (Barnett Sr. Am. Compl. ¶ 18). Because no questions called for such a response, Barnett Junior did not disclose Barnett *Senior's* prior employment at NJ Transit or the reasons for its termination. Both applicants maintain that they possessed the necessary skills and qualifications for the positions. (*Id.* at ¶¶ 17, 20). Barnett Junior was "qualified as both a locomotive engineer and a certified train conductor on Amtrak territory." (*Id.* at ¶ 21). Despite their qualifications, Amtrak did not administer a "skill assessment" or "knowledge examination" to either Plaintiff. (*Id.* at ¶¶ 27-29).

On July 15, 2015, within 30 seconds of each other, Plaintiffs received separate emails from Amtrak notifying each applicant that he had not been

selected for the position. (Barnett Sr. Am. Compl. ¶¶ 14, 15, 43). According to Plaintiffs, the timing was significant: Approximately 30 days earlier, Barnett Senior had resolved his "six year legal battle" against NJ Transit stemming from his complaint of gender discrimination. (*Id.* at ¶ 16). Plaintiffs allege that Amtrak's failure to hire either Plaintiff "is a direct result of [Barnett Senior's] engagement in protected activity while employed with his former employer, New Jersey Transit Rail Operations." (*Id.* at ¶¶ 34, 35).

In support of their claims, Plaintiffs initially identified the close working relationship between NJ Transit supervisory personnel and Amtrak Rail Supervision, the latter of whom, it is argued, influence Defendant's hiring decisions. (Barnett Sr. Am. Compl. ¶¶ 37, 38). In particular, Alan Zahn, NJ Transit's former Chief Trainmaster, and "one of the main actors named in [Barnett Senior's] civil action" against NJ Transit, is alleged to have a professional relationship with William Craven, Amtrak's Road Foreman II of Engines for the New York region. (*Id.* at ¶¶ 39-41). In light of that relationship, and the fact that "Amtrak cannot produce any written documentation of any skill or knowledge assessment that would support the decision not to hire [Plaintiffs]," Plaintiffs allege that Defendant's failure to hire them could only have been the result of "the intentional retaliatory animus of Amtrak supervision towards Plaintiff[s]." (*Id.* at ¶¶ 25, 30).

**B.    Procedural Background**

Plaintiffs filed their initial complaints on April 13, 2017, bringing claims pursuant to Title VII. (17 Civ. 2682, Dkt. #1; 17 Civ. 2683, Dkt. #1). On

April 27, 2017, this Court referred both cases to the District's Mediation Program. (17 Civ. 2682, Dkt. #3; 17 Civ. 2683, Dkt. #3). The mediations were ultimately unsuccessful, leading the Court to hold a joint pre-motion conference in both cases on March 7, 2018. (17 Civ. 2682, Dkt. #16; 17 Civ. 2683, Dkt. #16). Following the pre-motion conference, Plaintiffs amended their respective complaints on April 26, 2018. (17 Civ. 2682, Dkt. #20; 17 Civ. 2683, Dkt. #18). Defendant then filed its motion to dismiss and supporting papers in each case on June 15, 2018. (17 Civ. 2682, Dkt. #23-25; 17 Civ. 2683, Dkt. #21-22).[2]

On October 10, 2018, the Court exercised its discretion under Federal Rule of Civil Procedure 12(d) to convert Defendant's Rule 12(b)(6) motions into Rule 56 motions for summary judgment on the limited issue of Defendant's knowledge of Barnett Senior's protected activity. (17 Civ. 2682, Dkt. #34; 17 Civ. 2683, Dkt. #27). In order to satisfy itself that Rule 12(d)'s notice requirement had been fulfilled, the Court granted Plaintiffs 21 days and an

---

[2]  The supporting papers for the motion as to Barnett Senior included a notice to *pro se* litigants pursuant to Local Civil Rule 12.1, which notice provided in part:

> The defendant in this case has moved to dismiss or for judgment on the pleadings pursuant to Rule 12(b) or 12(c) of the Federal Rules of Civil Procedure, and has submitted additional written materials. This means that the defendant has asked the Court to decide this case without a trial, based on these written materials. You are warned that the Court may treat this motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. For this reason, THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION ON TIME by filing sworn affidavits as required by Rule 56(c) and/or other documents. The full text of Rule 56 of the Federal Rules of Civil Procedure is attached.

(17 Civ. 2682, Dkt. #26).

additional 10 pages to present pertinent material, followed by 14 days and 10 pages for Defendant to provide additional argument. (*Id.*). Plaintiffs filed their supplemental briefing on October 30, 2018. (17 Civ. 2682, Dkt. #35; 17 Civ. 2683, Dkt. #28). Defendant filed its papers on November 14, 2018, concluding briefing on all motions. (17 Civ. 2682, Dkt. #38; 17 Civ. 2683, Dkt. #29).

## DISCUSSION

### A. Applicable Law

#### 1. Motions Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 557).  Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  *Id.* at 663.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing documents that a court may properly consider on a motion to dismiss).

### 2.    Conversion of a Rule 12(b)(6) Motion Into a Rule 56 Motion

If a court wishes to consider matters beyond those specified in the preceding paragraph, it must convert the motion to one for summary judgment. In this regard, Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R.

Civ. P. 12(d).  A district court may thus convert a motion to dismiss into a motion for summary judgment when the motion presents matters outside the pleadings, provided that the court gives "sufficient notice to an opposing party and an opportunity for that party to respond."  *Groden* v. *Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995); *accord Parada* v. *Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014).

"[C]are should, of course, be taken by the district court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law."  *Ramsey* v. *Coughlin*, 94 F.3d 71, 73-74 (2d Cir. 1996) (quoting 6 James William Moore, *et al.*, MOORE'S FEDERAL PRACTICE ¶ 56.12, at 56-165 (2d ed. 1995)).  Such notice is "particularly important" for *pro se* litigants, who must be "unequivocal[ly]" informed "of the meaning and consequences of conversion to summary judgment."  *Hernández* v. *Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quotation marks omitted).

Where a court elects to consider materials outside the pleadings with regard to specific claims, the court may limit its conversion of the motion to those claims for which outside materials will be considered.  *See Alex* v. *Gen. Elec. Co.*, No. 12 Civ. 1021 (GTS) (CFH), 2014 WL 2510561, at *4 (N.D.N.Y. June 4, 2014) (stating that a court may "*partially* convert a motion to dismiss to a motion for summary judgment" (emphasis in original)); *Levy* v. *Aaron Faber, Inc.*, 148 F.R.D. 114, 117 (S.D.N.Y. 1993) (partially converting a motion

to dismiss to one for summary judgment, on the limited issue of the statute of limitations).

Where, as here, "both parties submit extrinsic evidence in support of their positions, a district court may fairly convert a motion to dismiss into one for summary judgment under Fed. R. Civ. P. 56." *Garcha* v. *City of Beacon*, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005); *see also Carruthers* v. *Flaum*, 388 F. Supp. 2d 360, 378-79 (S.D.N.Y. 2005) (converting a motion to dismiss to one for summary judgment where both sides submitted documents outside the pleadings). In conjunction with its motion to dismiss, Defendant submitted, as an exhibit, Barnett Senior's online application for the position of Passenger Engineer Trainee located in New York. (Beachell Decl., Ex. A). In opposition to Defendant's motions to dismiss, Plaintiffs attached the same document, and disputed its authenticity. (Barnett Sr. Opp. 1; Barnett Jr. Opp. 1).

The Court stated in its Order of October 9, 2018, that

> [g]iven the focused nature of [Defendant's argument that Plaintiffs have sufficiently alleged knowledge of Plaintiff's protected activity], resolution of this issue may greatly affect evaluation of Plaintiffs' claims. In the interest of efficiency and economy, the Court exercises its discretion to convert this motion to dismiss to a motion for summary judgment, only insofar as it pertains to Defendant's knowledge of Anthony Barnett's protect activity, and to consider the evidence provided by the parties.

(17 Civ. 2682, Dkt. #34; 17 Civ. 2683, Dkt. #27). Because both sides received notice and an opportunity to respond to the additional factual matter appended to their opponent's briefs, the Court exercises its discretion to convert those

portions of Defendant's motions to dismiss addressing knowledge arguments into motions for summary judgment.

### 3. Motions for Summary Judgment Under Federal Rule of Civil Procedure 56

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[3] A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253,

---

[3]  The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) … chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

256 (2d Cir. 2013) (finding summary judgment appropriate where the non-moving party failed to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248; see also *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). However, in considering "what may reasonably be inferred" from witness testimony, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342

(S.D.N.Y. 2005) (citing *County of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)).

In light of Plaintiffs' *pro se* status, the Court "afford[s] [them] a special solicitude[,]" and, in this regard, will liberally construe their pleadings and motion papers. *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Under this directive, the Court will read Plaintiffs' "'submissions to raise the strongest arguments they suggest.'" *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

### 4. Retaliation Claims Under Title VII

Title VII's anti-retaliation provision makes it "an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Claims under this provision are analyzed pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-04 (1973), although the analysis is truncated in the context of a motion to dismiss. *See Duplan* v. *City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (citing *Littlejohn* v. *City of New York*, 795 F.3d 297, 315 (2d Cir. 2015)). To survive a motion to dismiss under Rule 12(b)(6), "the allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Id.* (quoting *Littlejohn*, 795 F.3d at 316). The Second Circuit instructs that:

> To survive a motion to dismiss on his Title VII retaliation claim, [the plaintiff] had to plead a prima facie case that [i] he participated in a protected activity, [ii] the DOL knew of his participation, [iii] he was subject to an adverse employment action, and [iv] there was a causal connection between participation in the protected activity and the adverse employment action. *See Hicks* v. *Baines*, 593 F.3d 159, 164 (2d Cir. 2010). In this context, retaliation must be a "but-for" cause of the adverse employment action. *See Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). In effect, this means "that the adverse action would not have occurred in the absence of the retaliatory motive" even if it was not "the only cause of the employer's action." *Zann Kwan* v. *Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013) [("*Kwan*")].

*Moy* v. *Perez*, 712 F. App'x 38, 40 (2d Cir. 2017) (summary order).

On summary judgment, claims for retaliation under Title VII are subject to the full burden-shifting framework established in *McDonnell Douglas*. *See Fincher* v. *Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010). Under that framework, once a plaintiff makes out a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802-03. "If the employer demonstrates such a reason, the burden shifts back to the plaintiff to adduce evidence from which a rational finder of fact could infer 'that the desire to retaliate was the but-for cause of the challenged employment action.'" *Ya-Chen Chen* v. *City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (quoting *Univ. of Tex. Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338, 352 (2013)); *see generally Kwan*, 737 F.3d at 842-44.

**B.   Analysis**

### 1.   Barnett Junior Has Standing to Bring a Title VII Antiretaliation Claim Related to His Father's Protected Activity

Defendant argues preliminarily that Barnett Junior lacks standing to bring a Title VII antiretaliation claim because he himself engaged in no protected activity.  (Def. Br. Barnett Jr. 6).  Instead, his claim relies on his father's gender discrimination complaint while at NJ Transit.  (*Id.*).  Therefore, Defendant asserts, Barnett Junior, as a third-party who did not engage in any protected activity, has no standing.  (*Id.*).

Defendant acknowledges, as it must, that in *Thompson* v. *North American Stainless, LP*, 562 U.S. 170, 174-75 (2011), the Supreme Court upheld third-party Title VII retaliation claims.  The plaintiff in *Thompson* had been fired after his fiancée, who worked for the same employer, filed a gender discrimination charge with the Equal Employment Opportunity Commission.  *See id.* at 170.  The Court held that the plaintiff was protected by Title VII's antiretaliation provision and therefore could bring a claim under the statute.  *See id.* at 171 ("[Plaintiff] falls within the zone of interests protected by Title VII.").

Following *Thompson*, courts in the Second Circuit routinely allow third-parties to bring anti-retaliation claims.  For example, plaintiffs may file retaliation suits under Title VII when their spouses bring Workers' Compensation and EEOC claims, *see Schwartz* v. *New York State Ins. Fund*, No. 12 Civ. 1413 (GBD), 2012 WL 5587604, at *1-2 (S.D.N.Y. Aug. 28, 2012), or complain of gender-based discrimination, *see Kaye* v. *Storm King Sch.*, No. 11

Civ. 3369 (VB), 2015 WL 5460107, at *3 (S.D.N.Y. June 8, 2015). Parents also

have standing to bring retaliation claims based on the protected activity of their

children. *See, e.g.*, *Vormittag* v. *Unity Elec. Co.*, No. 12 Civ. 4116 (RJD), 2014

WL 4273303, at *5 (E.D.N.Y. Aug. 28, 2014).

Attempting to distinguish those cases from the present action, Defendant

accurately states that, "there are no cases suggesting that a plaintiff might

have standing to sue a completely *new prospective employer*." (Def. Br. Barnett

Jr. 6). Instead, the Second Circuit case law focuses on situations where the

third-party who brings the claim is employed by the same company as a family

member who engages in protected activity. (*Id.*). Furthermore, the protected

behavior generally takes place within the context of the plaintiff's current

employment, as opposed to conduct that occurred at a prior job. (*Id.*).

Defendant is correct in arguing that the Second Circuit has not yet

explicitly applied *Thompson* to cases raising the granular issue of third-party

claims against prospective, as opposed to current, employers. However, given

the general spirit of the Supreme Court's decision, this Court will extend the

reasoning of *Thompson* to apply in this instance. The *Thompson* Court

championed a broad reading of Title VII's antiretaliation provision, and

specifically refused to delineate the provision's boundaries. *See Thompson*, 562

U.S. at 175 ("Given the broad statutory text and the variety of workplace

contexts in which retaliation may occur, Title VII's antiretaliation provision is

simply not reducible to a comprehensive set of clear rules."). Notably, the

Court declined to identify a fixed class of situations "for which third-party

16

reprisals are unlawful," holding instead that "firing a close family member will almost always meet the … standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so, but beyond that we are reluctant to generalize." *See id.* Given the charge to construe Title VII broadly, absent additional clarification from the Second Circuit, and on the particular facts of these cases, the Court sees no reason to abrogate that rule for third-party claims. Instead, the test is simply whether the employer's retaliation against a third-party was such that a reasonable worker might be dissuaded from engaging in protected activity. *See Thompson*, 562 U.S. at 174.

Accepting the facts in the Amended Complaints as alleged, this Court finds that Plaintiffs satisfied that standard. A reasonable worker could certainly be dissuaded from bringing a claim against his employer if he were aware that, in doing so, he might affect his son's employment opportunities in the future. That calculus does not significantly change whether those opportunities are with the same employer, or a prospective employer in the same field. Therefore, Title VII prohibits Defendant from retaliating against Barnett Junior for his father's protected conduct and Barnett Junior has standing to bring a claim pursuant to the statute.

### 2. Plaintiffs Have Failed to Identify a Genuine Dispute of Material Fact Concerning Defendant's Knowledge of Barnett Senior's Protected Activity

As noted, in order to establish a *prima facie* case of retaliation, Plaintiffs must demonstrate that Defendant Amtrak knew about Barnett Senior's protected activity. *See Hicks*, 593 F.3d at 164. Defendant argues that because

it did not know that Barnett Senior had complained about gender discrimination to NJ Transit, its decision not to hire Plaintiffs could not have been in retaliation for that protected activity. (Def. Br. Barnett Sr. 6). In response, Plaintiffs argue that Defendant *was* aware of Barnett Senior's prior complaint because (i) Barnett Senior disclosed the prior complaint in his online application to Defendant, and (ii) a former employee of NJ Transit, who currently works at Defendant, knew about the complaint. (Pl. Supp. Br. 2; Barnett Sr. Opp. 4).

### a. No Reasonable Jury Could Find That Amtrak Became Aware of Barnett Senior's Protected Activity from His Job Application

In his Amended Complaint, Barnett Senior alleges that he disclosed his protected activity to Amtrak on his job application. (Barnett Sr. Am. Compl. ¶ 10). In response to an application question inquiring into any prior railroad experience, Barnett Senior listed his employment with NJ Transit. (*Id.* at ¶¶ 5, 6). And when prompted to list the reason why he was no longer employed by NJ Transit, Barnett Senior claims that he "answered the online question by stating that he was terminated via constructive discharge due in large part to [his] complaints of and opposition to gender based discrimination in the workplace at New Jersey Transit." (*Id.* at ¶ 10). The Court acknowledges that this allegation would be enough for Plaintiffs to survive a motion to dismiss.

However, the Court applies a different standard on summary judgment. Amtrak, as the moving party, bears the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Here,

Defendant claims that Plaintiffs cannot establish a *prima facie* case of retaliation and, in support of that claim, attaches to its briefing a copy of Barnett Senior's online application. (Beachell Decl., Ex. A). Notably, and in sharp contrast to the allegation in the Amended Complaints, the online application that Defendant submitted to this Court contains no mention of any of Barnett Senior's prior protected activity. (*Id*.). Instead, in the "Reason for Leaving" section discussing his prior employment at NJ Transit, Barnett Senior chose "No Selection." (*Id*.).

Hoping to preempt challenges to the authenticity and admissibility of Barnett Senior's online application, Defendant submitted a declaration from Amy Beachell, Amtrak's Senior Direct of Talent Acquisition, in which she attests that the exhibit submitted to the Court "is a true and correct copy of Mr. Barnett's March 5, 2015 online application." (Beachell Decl. ¶ 4). Additionally, as part of its reply briefing, Defendant submitted a declaration from Nikisha Banks, an employee in Amtrak's Information Technology Department who reviewed Barnett Senior's online job application. (Banks Decl.). Ms. Banks explained that there is "no possible way" for an Amtrak employee to have altered Barnett Senior's application:

> [W]hen an external applicant, such as Mr. Barnett, applies for an employment position through our online system, the applicant logs in with his username (his email address) and then also creates a unique password that is known only to the applicant. No individual at Amtrak has access to that password. The only way to alter information on the application is for the applicant to log in with that unique password.

(Banks Decl. ¶ 7). Separately, Ms. Banks confirmed that there was only one version of Barnett Senior's online application in his application file, which version was created when Barnett Senior completed his online application on March 5, 2015. (*Id.* at ¶ 8; *cf.* Pl. Reply 4). There is no indication that the application was later altered. (Banks Decl. ¶ 8).

Defendant Amtrak has proffered sufficient evidence that Plaintiffs cannot meet an essential element of their respective retaliation claims, namely, the element that Defendant be aware of some protected activity on the part of Barnett Senior. Two Amtrak employees have produced identical copies of Barnett Senior's application. Neither copy contains any reference to his prior protected activity. In addition, according to those employees' sworn Declarations, it is technologically infeasible for any Amtrak employee to have altered the application that Barnett Senior submitted.

Because Defendant has met this burden, Plaintiffs "must set forth specific facts showing that there is a genuine issue for trial" with respect to Amtrak's awareness of Barnett Senior's protected activity. *Anderson*, 477 U.S. at 248. They "may not rest upon the mere allegations or denials of [their] pleading[s]." *Id.* Nor can Plaintiffs "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

Plaintiffs dispute the authenticity of the online application submitted by Defendants. (Barnett Sr. Opp. 4). Barnett Senior submits his own affidavit, in which he states that the copy of the job application submitted by Amtrak is not a self-authenticating document under Federal Rule of Evidence 902, and that it

"misrepresents the truth as it pertains to notice of protected activity." (Barnett Sr. Aff.). In their briefing, Plaintiffs elaborate that Defendant's "production [of Barnett Senior's job application] is nothing more than some values combined in part truth to give the impression that Mr. Barnett did not inform Amtrak of his protected activity while he was employed at his former employer, [NJ Transit]." (Barnett Sr. Opp. 4).

The Court first addresses the issue of document authentication. "[A]uthentication 'is a precondition to consideration of documentary evidence on summary judgment.'" *Jay Dees Inc.* v. *Def. Tech. Sys., Inc.*, No. 05 Civ. 6954 (SAS), 2008 WL 4501652, at *6 (S.D.N.Y. Sept. 30, 2008); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). However, the Court need not reach the issue of whether the online application form is self-authenticating because it has been authenticated through other means — namely, the sworn declarations of Amy Beachell and Nikisha Banks. Both Amtrak employees attest that the document is a true and complete copy of a document maintained by Defendant in the regular course of its business. Under Federal Rule of Evidence 901(b), "testimony of a witness with knowledge provides appropriate authentication for documents." *See Commercial Data Servers, Inc.* v. *Int'l Bus. Machines Corp.*, 262 F. Supp. 2d 50, 60 (S.D.N.Y. 2003) (considering IBM documents on summary judgement when authenticated by the sworn declarations of two IBM

employees).  Here, because of Ms. Banks's and Ms. Beachell's sworn declarations, there is sufficient evidence of the job application's authenticity to permit the Court to consider it.

Next, the Court considers whether Plaintiffs have set forth specific facts identifying a genuine dispute of fact with regards to the *contents* of Barnett Senior's application.  It finds that they have not.  Plaintiffs have merely rested on their allegations in the pleadings and on their subsequent denials.  That is, Barnetts Senior and Junior simply argue that the former disclosed the complaint in his job application, and thus that any evidence to the contrary is false or fabricated.  Unfortunately, even viewing their claims with the solicitude warranted for *pro se* litigants, the Court concludes that Plaintiffs have failed to provide the Court with information, much less facts, sufficient to raise a genuine dispute of fact regarding Barnett Senior's disclosures to Defendant. Instead, Plaintiffs have simply argued "that there is some metaphysical doubt" as to Defendant's knowledge, *Matsushita,* 475 U.S. at 586, and rely on "mere speculation or conjecture as to the true nature of the facts," *Knight*, 804 F.2d at 12.  Neither is enough to overcome a motion for summary judgment.  No reasonable juror could find that Barnett Senior disclosed his protected activity on his Amtrak job application.

> **b.**     **No Reasonable Jury Could Find that Amtrak Became Aware of Barnett Senior's Protected Activity from a Former NJ Transit Employee**

Alternatively, Plaintiffs argue that Defendant became aware of Barnett Senior's protected activity through James Halloran, a former employee of NJ

Transit and current employee of Defendant. (Pl. Supp. Br. 2). Mr. Halloran worked at NJ Transit from October 2004 until September 2013. (Pl. Supp. Br., Ex. 1). During part of that time, Barnett Senior also worked at, and lodged his discrimination complaint with, NJ Transit. In September, 2013, Mr. Halloran left NJ Transit and began working for Defendant. (*Id*.). He was still working at the company when Plaintiffs submitted their job applications to Defendant in February 2015. (*Id*.).

To demonstrate that Mr. Halloran had "specific knowledge of Mr. Barnett's EEOC protected activity and termination" — which knowledge then could be imputed to Defendant — Plaintiffs produced seven emails between employees at NJ Transit. (Pl. Supp. Br. 2 & Ex. 2-8).[4] All seven of these intracompany emails were sent in November or December 2008, when both Mr. Halloran and Barnett Senior worked at NJ Transit. (*Id*.). None of the emails is from Mr. Halloran or sent directly to him. (*Id*.). Of the seven, Mr. Halloran is copied on just three emails, all of which discuss Barnett Senior's failed verbal examination during training, and a schedule for retaking the test. (Pl. Supp. Br., Ex. 3, 4, 6). Only one of those emails includes a reference to "the EEO office"; significantly, however, that email does *not* state that Barnett Senior filed

---

[4]     The seven emails were produced during discovery in a Title VII retaliation lawsuit brought by Barnett Senior's wife against NJ Transit. *See Barnett* v. *New Jersey Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (per curiam) (affirming district court's grant of summary judgment in favor of NJ Transit).

an EEO complaint, nor does it provide "any detail regarding any protected

activity in which Plaintiff engaged." (Pl. Supp. Br., Ex. 6; Def. Br. 6).[5]

Defendant argues that the emails do not raise a triable issue that Mr.

Halloran was aware of Barnett Senior's protected activity. (Def. Supp. Br. 4-5).

In the alternative, Defendant claims that "the email correspondence provides

no evidence … that Mr. Halloran conveyed that information to anyone on

Amtrak's Talent Acquisition Team, or anyone else at Amtrak even remotely

responsible for the selection of applicants in 2015." (*Id.* at 4). Both issues,

according to Defendant, are fatal to Plaintiffs' retaliation claim. (*Id.* at 3-6).

Beginning with Defendant's second argument, the Court disagrees that

Plaintiffs are required to show that the specific actors in charge of Amtrak

hiring had knowledge of Barnett Senior's protected activity. In *Gordon* v. *New*

---

[5]     Without any additional context, the reference to "the EEO office" is ambiguous. On
December 9, 2008, NJ Transit employee John Smolczynski sent an email to another NJ
Transit employee with the subject line "pc oral aj barnett." (Pl. Supp. Br., Ex. 6). The
body of the email reads, "Reminder: Please let me know where and when you would like
student to report to receive his verbal examination." (*Id.*). Thirteen Amtrak employees
were copied on the email, including Mr. Halloran. (*Id.*). Another NJ Transit employee
replied, also copying the original recipients, "Tell him to go to the EEO office." (*Id.*). A
third employee then responded to the entire email chain, including Halloran, "Good
answer! Make sure [B]ill [H]emphill rides with him after he's promoted!" (*Id.*).

The additional emails produced by Plaintiff, on which Mr. Halloran was not copied, may
shed some light on the reference. Those emails indicate that Barnett Senior had
previously failed two tests during training, and needed to retake a qualifying verbal
examination. (Pl. Supp. Br., Ex. 8). On November 13, 2008, Bill Hemphill, an employee
in NJ Transit's EEO office, sent an email to another NJ Transit employee that stated:
"Anthony [Barnett Senior] came to see me today to file an EEO complaint concerning
the subjectivity of his most recent oral tests. I need you to stop any actions that would
terminate him from the training program until my investigation is complete." (Pl. Supp.
Br., Ex. 2). Employees later expressed frustration that Barnett Senior had "failed two
tests, but because he made a false eeo claim, now he gets additional time to qualify."
(Pl. Supp. Br., Ex. 8). The Court expresses no view on the truth of the matters
contained in the emails. It writes to underscore, however, that there is no indication
that Mr. Halloran, and certainly no indication that Defendant, was aware of these
emails.

*York City Board of Education*, the Second Circuit recognized that "[n]either this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity." 232 F.3d 111, 116 (2d Cir. 2000). When a plaintiff makes a complaint to an officer of a corporation, that complaint is sufficient to impute corporate knowledge. *See Kwan*, 737 F.3d at 844-45.[6] "A plaintiff need not show that the corporate official responsible for the adverse employment action knew of the protected activity." *Gordon*, 232 F.3d at 116. Thus, while Plaintiffs have offered no evidence to demonstrate that anyone on Amtrak's Talent Acquisition Team was aware of Barnett Senior's NJ Transit complaint, the Court finds that Plaintiffs are not required to show that any individual decision-maker knew of the protected activity to sustain a retaliation claim.

What proves to be fatal to Plaintiffs' claims is the failure to raise a triable issue that Mr. Halloran was actually aware of Barnett Senior's protected activity, as would be required to impute "general corporate knowledge" to Amtrak. Corporate knowledge is generally found in situations where the existence of protected activity is communicated directly to, and acknowledged by, a defendant's officer. For example, where a non-decisionmaker receives a copy of plaintiff's complaint, *see, e.g.*, *Kessler* v. *Westchester Cnty. Dep't of Soc. Servs.,* 461 F.3d 199, 210 (2d Cir. 2006), or a direct email stating that a

---

[6]    The Court assumes for purposes of this analysis that Mr. Halloran qualifies as an officer.

complaint has been filed against the institution, *see Moccio* v. *Cornell Univ.*, 889 F. Supp. 2d 539, 585 (S.D.N.Y. 2012) (finding corporate knowledge when a university office received an email stating: "[Plaintiff] has filed a complaint of discrimination (based on gender, age, and family responsibilities) against us related to the upcoming office move"), *aff'd*, 526 F. App'x 124 (2d Cir. 2013) (summary order).  In those instances, the corporate "defendant in the retaliation lawsuit was also the alleged discriminator and thus knowledge was established." *Uddin* v. *City of New York*, 427 F. Supp. 2d 414, 427 (S.D.N.Y. 2006).

By contrast, here, Mr. Halloran was copied on a single email with an ambiguous reference to "the EEO Office," seven years prior to Amtrak's alleged retaliation.  Mr. Halloran did not confirm receipt, or respond to any of the three emails on which he was copied.  Nothing in the record suggests that those emails would have been particularly noteworthy to Mr. Halloran in 2008.  As part of his job, Mr. Halloran was routinely "copied on certain trainee-related emails as a matter of course but he had no duty to respond or take any actions." (Def. Supp. Br. 5).  Even drawing all inferences in favor of Plaintiffs, no reasonable jury could find that the proffered emails were sufficient to make Mr. Halloran aware of Barnett Senior's protected activity at the time they were sent in 2008.  More broadly, there is insufficient evidence to raise a genuine dispute of fact that Mr. Halloran was ever aware of Barnett Senior's protected activity at NJ Transit before leaving to work at Defendant.  Accordingly, the

record before the Court cannot support a finding that Amtrak had "corporate knowledge" of the discrimination complaint.

In short, Plaintiffs have failed to raise a genuine dispute of material fact with respect to Defendant's knowledge of Barnett Senior's protected activity. Because Plaintiffs have failed to establish an element of their *prima facie* case, the Court grants summary judgment in favor of Defendant in both actions.

## CONCLUSION

For the foregoing reasons, Defendant's motions for summary judgment are GRANTED, and Plaintiffs' Amended Complaints are dismissed. The Clerk of Court is directed — with respect to both cases 17 Civ. 2682 and 17 Civ. 2683 — to terminate all pending motions, adjourn all remaining dates, and close the cases.

SO ORDERED.

Dated:     December 10, 2018
             New York, New York

_____
      KATHERINE POLK FAILLA
      United States District Judge

*Sent by First Class Mail to:*
Anthony Barnett
783 Prospect Street
Maplewood, NJ 07040

Anthony J. Barnett, Jr.
35 E. Elizabeth Ave., Apt. C17
Linden, NJ 07036